# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
### September 4, 2002 Session

## PERO'S STEAK AND SPAGHETTI HOUSE and LOUIS INN v. ELIZABETH JEAN HINKLE LEE and FIRST AMERICAN NATIONAL BANK and FIRST TENNESSEE BANK NATIONAL ASSOCIATION

**Appeal by Permission from the Court of Appeals, Eastern Section**
**Circuit Court for Knox County**
**Nos. 3-541-96 and 3-544-96  Dale C. Workman, Judge**

---

**No. E2001-00254-SC-R11-CV - Filed October 24, 2002**

---

The issue in this appeal is whether the trial court and the Court of Appeals erred in refusing to apply the discovery rule to the three-year statute of limitations for conversion of negotiable instruments and in granting the defendant's motion for partial summary judgment as to checks allegedly converted more than three years before the plaintiffs filed suit on August 29 and 30, 1996.  After fully and carefully considering the record and the relevant authorities, we conclude that the discovery rule does not apply to toll the statute of limitations when the claim alleged is conversion of a negotiable instrument.  This conclusion applies both to the former statute of limitations, Tennessee Code Annotated section 28-3-105, and the current statute of limitations, Tennessee Code Annotated section 47-3-118(g).  Therefore, in the absence of fraudulent concealment, a cause of action for conversion of a negotiable instrument accrues, and the statute of limitations begins to run, when the instrument is negotiated.  With respect to the plaintiffs' claim that the defendant is guilty of fraudulent concealment, we are of the opinion that the record contains no genuine issue of material fact precluding summary judgment.  Accordingly, the judgment of the Court of Appeals affirming the trial court's grant of partial summary judgment to the defendant is affirmed on the separate grounds stated herein.

**Tenn. R. App. P. 11; Trial Court and Court of Appeals Affirmed**

FRANK F. DROWOTA, III, C. J., delivered the opinion of the court, in which E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, and WILLIAM M. BARKER, JR., JJ, joined.

James S. Tipton, Jr., and W. Morris Kizer, Knoxville, Tennessee, for plaintiffs-appellants, Pero's Steak and Spaghetti House and Louis Inn.

Stephen G. Anderson, Knoxville, Tennessee, for defendant-appellee, First Tennessee Bank National Association.

## OPINION

### Factual and Procedural Background

This appeal involves the alleged conversion of negotiable instruments. The plaintiffs, Pero's Steak and Spaghetti House ("Pero's") and Louis Inn are general partnership businesses in Knoxville. Brothers Arthur, Al, and Gus Peroulas were the partners who owned Pero's, and the Peroulas brothers, along with their brother-in-law, Menas Keramidas, were the partners who owned Louis Inn. These men immigrated to the United States in the 1950s, became citizens in 1956 and worked in all areas of the restaurant business, and in 1960, they purchased Louis Inn.

The partners hired Hinkle & Hinkle, a family accounting and bookkeeping firm, to perform all the general accounting, bookkeeping, and tax preparation for Louis Inn and the later-acquired Pero's. Elmer Hinkle operated the family business with his wife, Anna, and eventually with his daughter, Elizabeth Hinkle Lee ("Lee"). Beginning at some point in 1985, after Elmer Hinkle died and his wife retired from the business, Lee handled all of the accounting, bookkeeping, and tax preparation work for Pero's and Louis Inn.

The plaintiffs allege that between 1988 and 1995, fifty-four checks written by Pero's and eighty-six checks written by Louis Inn were converted by Lee and the defendant, First Tennessee Bank National Association ("First Tennessee"). Pero's did not have an account at First Tennessee. The Pero's checks were drawn on First American Bank, where Pero's did its banking. Louis Inn had an account with First Tennessee, and the Louis Inn checks were drawn on this account. All 140 checks were payable to First Tennessee. All the checks were given to Lee by the partners of Pero's or Louis Inn, and she presented all of them to the First Tennessee branch office near the office of Hinkle & Hinkle. Of the 140 checks at issue, one Pero's check and thirty-seven Louis Inn checks were written within three years of August 29 & 30, 1996, the dates on which the complaints were filed.

The plaintiffs allege that all the checks were intended to be used to pay federal taxes. First Tennessee maintained a separate, segregated account to enable employers to pay federal taxes, which was called the Treasury, Tax and Liability Account ("Tax Account"). Employers, like Pero's and Louis Inn, would deposit funds into this account, and each branch office of First Tennessee would receive these deposits, set them aside until the end of the day, and then deposit the funds into the Tax Account. At the end of each day, First Tennessee transmitted all the monies in the Tax Account to the Internal Revenue Service ("IRS"), along with a tape identifying the portion to be credited to each listed employer tax identification number. According to the testimony of the partners, Pero's and Louis Inn adopted this method of paying taxes on Elmer Hinkle's suggestion that it was convenient and trustworthy. First Tennessee did not have a similar account and procedure available for paying state taxes.

The checks at issue in this appeal were not processed in strict accordance with the Tax Account procedure. First Tennessee occasionally allowed Lee to cash the checks without endorsement and use some or all of the proceeds to purchase cashier's checks payable to the State of Tennessee or to the IRS. At other times First Tennessee allowed Lee, again without endorsement, to deposit some or all of the funds from the checks into the "Hinkle & Hinkle Tax Account." Lee often would then write checks on this account to pay taxes owed by Pero's and Louis Inn. Lee also wrote checks on this account for her personal needs.

In 1991, Pero's was audited by the IRS. As a result of that audit, Pero's was required to pay approximately $39,000 in back taxes, interest, and penalties. On or about February 3, 1992, Pero's received another notice from the IRS. This notice was sent to the restaurant located at 4931 Kingston Pike, and it stated that the IRS had not received any tax deposits during the fourth quarter of 1990. The partners of Pero's had written and delivered to Lee during that quarter four checks, each in the amount of $9,500, for a total of $38,000. Before and after 1991, the plaintiffs had received numerous notices from the IRS, some indicating underpayment of payroll taxes, others indicating overpayment, and some indicating a refund due. The plaintiffs turned these notices over to Lee and relied upon her to handle them. Lee assured the plaintiffs that the notices were an IRS mistake and that she would take care of them. On occasion, Lee used funds from the Hinkle & Hinkle Account to pay the outstanding tax deficiencies.

In July of 1995, the plaintiffs received an IRS levy and approximately fifteen notices alleging a tax deficiency. The partners investigated by personally contacting the IRS. In a March 14, 1996 letter, the IRS advised the partners to contact their bank. Upon further investigation, the partners learned that 140 checks payable to First Tennessee had not been applied to the Tax Account.

As a result of this investigation, on August 29, 1996, Pero's filed a complaint against Lee, First Tennessee, and First American National Bank.[1] The complaint alleged that First Tennessee had engaged in joint conversion with Lee by improperly allowing her to cash or deposit fifty-four Pero's checks that were payable to First Tennessee and intended for deposit in the Tax Account. On August 30, 1996, Louis Inn filed a complaint that was essentially the same, alleging that First Tennessee had engaged in joint conversion with Lee by improperly allowing her to cash or deposit eighty-six Louis Inn checks that were payable to First Tennessee and intended for deposit in the Tax Account.

The cases were consolidated and eventually tried by a jury. Although the proof showed that First Tennessee had allowed Lee to cash and/or deposit 140 Pero's and Louis Inn checks, First Tennessee records revealed that a substantial portion of the proceeds of the more recent checks had been used to pay taxes owed by Pero's and Louis Inn. First Tennessee also argued that it was not guilty of conversion because Lee had been an agent of the plaintiffs, who was authorized to direct the tellers to cash and/or deposit the disputed checks. The plaintiffs responded that Lee only had

---

[1]Pero's announced at trial a compromise and dismissal of its claim against First American National Bank. Although Lee appeared and testified at trial pursuant to a subpoena, she was not represented by counsel and did not mount a defense. Neither First American nor Lee is a party to this appeal.

authority to deliver the checks to First Tennessee for deposit. The issue of agency was submitted to the jury. Also submitted to the jury was the question of whether the claims were barred by a three-year statute of limitations. First Tennessee argued that claims relating to checks allegedly converted more than three years before the complaint was filed were barred by the statute of limitations. The plaintiffs responded that the claims were timely filed because the statute of limitations had been tolled by the discovery rule, or in the alternative, by fraudulent concealment. The jury returned verdicts for the plaintiffs; however, the plaintiffs filed a motion for a new trial which the trial court granted on the basis that the verdicts as to damages were inadequate and not consistent with the weight of the evidence at trial. The trial court also granted the defendant's motion to transfer the consolidated cases to another judge for the second trial.

After the transfer, First Tennessee moved for partial summary judgment, again relying upon the three-year statute of limitations. The plaintiffs opposed the motion, again arguing both that the discovery rule applied to toll the running of the statute of limitations, and in the alternative, that the statute of limitations was tolled by First Tennessee's fraudulent concealment. According to the plaintiffs, because the checks payable to First Tennessee constituted "special deposits," First Tennessee had a fiduciary duty which imposed upon First Tennessee both the duty to inquire of the makers, Pero's and Louis Inn, as to how the checks were to be handled, and the duty to disclose to Pero's and Louis Inn all material facts. The plaintiffs argued that if First Tennessee had satisfied its duty of inquiry, it would have discovered Lee was not acting in accordance with the intent of Pero's and Louis Inn. The plaintiffs further argued that First Tennessee is charged with the knowledge it would have discovered. Therefore, they contended that First Tennessee was guilty of fraudulent concealment for failing to disclose to the plaintiffs that Lee was improperly cashing and depositing some of the checks written for tax purposes.

After reviewing and considering the entire record from the initial trial, the trial court granted First Tennessee's motion for partial summary judgment, finding both that the discovery rule does not apply to toll the three-year statute of limitations and that there is no genuine issue of material fact as to fraudulent concealment. Specifically, the trial court held that the plaintiffs by exercise of reasonable care and diligence could have discovered their claims in February of 1992, when they received the IRS notice stating that no taxes had been paid for the fourth quarter of 1990. In so holding, the trial court implicitly found that no genuine issue of material fact existed as to one of the required elements of fraudulent concealment, i.e., that the plaintiff was unable to discover the claim despite the exercise of reasonable care and diligence.

Following the trial court's decision, the plaintiffs and First Tennessee stipulated as to the net amount of the single Pero's check and the thirty-seven Louis Inn checks cashed or deposited by Lee within three years of the filing of the complaint. With respect to the plaintiffs and First Tennessee, the trial judge certified its order and final judgment in accordance with Tennessee Rule of Civil Procedure 54.02. Thereafter, the plaintiffs appealed, arguing that summary judgment was not appropriate because the statute of limitations was tolled by the discovery rule and by fraudulent concealment.

In a split decision, the Court of Appeals affirmed the trial court's judgment. The Court of Appeals unanimously agreed that the discovery rule does not apply to the three-year statute of limitations enacted by the Legislature in 1995 and effective June 1, 1996. See Tenn. Code Ann. § 47-3-118(g). The majority of the Court of Appeals concluded that the 1996 statute governed the plaintiffs' claims, and as a result, held that the trial court correctly found that claims on checks converted more than three years prior to the filing of the complaint were time-barred. The majority alternatively reasoned that even if Tennessee Code Annotated section 28-3-105, the pre-1996 statute, governed the plaintiffs' claims, and even if the discovery rule applied to toll the running of that statute, summary judgment was appropriately granted in this case. In particular, the Court of Appeals agreed with the trial court that there was no genuine issue of disputed fact: the plaintiffs knew or reasonably should have known of their claims on February 3, 1992, when they received the IRS notice stating that no taxes had been paid for the fourth quarter of 1990. The dissenting judge would have held that the plaintiffs' claims accrued prior to the effective date of section 118(g), and as a result, section 28-3-105, to which the discovery rule applied, governed the plaintiffs' claims. The dissenting judge was of the opinion that a genuine issue of material fact existed as to when the plaintiffs discovered or reasonably should have discovered their claims and would have held that summary judgment was not appropriate.

We granted the plaintiffs' application for permission to appeal and now affirm, on the separate grounds stated herein, the judgment of the Court of Appeals upholding the trial court's grant of partial summary judgment to First Tennessee.

## Standard of Review

An appellate court reviews a grant of summary judgment de novo with no presumption that the trial court's conclusions were correct. See Mooney v. Sneed, 30 S.W.3d 304, 306 (Tenn. 2000). Summary judgment is appropriate only when the moving party demonstrates that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; See also Webber v. State Farm Mut. Auto. Ins. Co., 49 S.W.3d 265, 269 (Tenn. 2001). In reviewing the record, "[c]ourts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor." Staples v. CBL & Assocs. Inc., 15 S.W.3d 83, 89 (Tenn. 2000). "If both the facts and conclusions to be drawn therefrom permit a reasonable person to reach only one conclusion, then summary judgment is appropriate." Seavers v. Methodist Med. Ctr. of Oak Ridge, 9 S.W.3d 86, 91 (Tenn.1999).

## Discovery Rule

The primary issue in this appeal is a question of first impression: Does the discovery rule apply to toll the statute of limitations when the cause of action alleged is conversion of a negotiable instrument? "When determining whether to apply the discovery rule, this Court considers the specific statutory language at issue and balances the policies furthered by application of the discovery rule against the legitimate policies upon which statutes of limitations are based." Quality Auto Parts Co., Inc., v. Bluff City Buick Co. Inc., 876 S.W.2d 818, 820 (Tenn. 1994) (declining to

apply the discovery rule to toll the six-month slander statute of limitations).

Consistent with Quality Auto Parts Co., we begin our analysis with the language of the two statutes at issue in this appeal. Before 1996, during the time when many of the checks allegedly were converted, the applicable statute of limitations provided as follows:

> The following actions shall be commenced within three (3) years from the accruing of the cause of action: . . . (2) Actions for the detention or conversion of personal property.

Tenn. Code Ann. § 28-3-105 (emphasis added); see also McConnico v. Third Nat'l Bank, 499 S.W.2d 874, 891 (Tenn. 1973). In 1995, the General Assembly adopted Tennessee Code Annotated section 47-3-118(g). This statute became effective on June 1, 1996, and it provides:

> (g) Unless governed by other law regarding claims for indemnity or contribution, an action (i) for the conversion of an instrument, for money had and received, or like action based on conversion, (ii) for breach of warranty, or (iii) to enforce an obligation, duty, or right arising under this chapter and not governed by this section must be commenced within three (3) years after the cause of action accrues.

Tenn. Code Ann. § 47-3-118 (emphasis added). Although the wording of these statutes is slightly different, the critical language is the same. Clearly, both statutes require that an action for conversion of a negotiable instrument be commenced within three years of the time the cause of action accrues. Therefore, nothing in the language suggests that these statutes should be interpreted differently with respect to application of the discovery rule.

Moreover, these statutes are not different in any other relevant respect. While Section 118(g), the 1996 statute, is part of Tennessee's version of the Uniform Commercial Code ("TUCC"), negotiable instruments have long been governed by the TUCC. Therefore, whether applying Section 118(g) or Section 28-3-105, the considerations are the same because the claim is the same – conversion of a negotiable instrument. In addition, the Comments to Section 118(g) provide that the section "follows general law in stating that the period runs from the time the cause of action accrues." Therefore, general law governing when a cause of action accrued under section 28-3-105 also governs when a cause of action accrues under Section 118(g). See Tenn. Code Ann. § 47-1-102(1); Wakefield v. Crawley, 6 S.W.3d 442, 447 (Tenn. 1999)(stating that the Comments are evidence of the purposes and policies underlying uniform provisions). Therefore, the current statute's location in the Tennessee Code does not suggest that it should be interpreted differently than Section 28-3-105.

Finally, the policies supporting both statutes are the same. All statutes of limitations are intended to ensure fairness and justice. Such statutes prevent undue delay in filing lawsuits and thereby ensure that evidence is preserved and facts are not obscured by the lapse of time or the defective memory or death of a witness. Quality Auto Parts Co. Inc., 876 S.W.2d at 820. These

policies apply regardless of the statute's location in the Code. Given that the statutes are identical in all material respects, we are of the opinion that the discovery rule either applies to both, or the discovery rule applies to neither. To decide which proposition is appropriate, it is important to consider next the history and purpose of the discovery rule.

The discovery rule was first applied in Tennessee almost thirty years ago in Teeters v. Currey, 518 S.W.2d 512, 515 (Tenn. 1974), a medical malpractice case. It is now well-established that, where applicable, the discovery rule is an equitable exception that tolls the running of the statute of limitations until the plaintiff knows, or in the exercise of reasonable care and diligence, should know that an injury has been sustained. Quality Auto Parts Co. Inc, 876 S.W.2d at 820. The discovery rule does not, however, toll the statute of limitations until the plaintiff actually knows that he or she has a cause of action. The plaintiff is deemed to have discovered the right of action when the plaintiff becomes aware of facts sufficient to put a reasonable person on notice that he or she has suffered an injury as a result of the defendant's wrongful conduct. Shadrick v. Coker, 963 S.W.2d 726, 733 (Tenn. 1998); Roe v. Jefferson, 875 S.W.2d 653, 657 (Tenn. 1994). Were statutes of limitations strictly applied, plaintiffs would be required to sue "to vindicate a non-existent wrong, at a time when the injury is unknown and unknowable." Teeters, 518 S.W.2d at 515. The discovery rule is intended to prevent the inequity such a strict application of the rule would produce. Quality Auto Parts Co. Inc., 876 S.W.2d at 820.

In this appeal, the plaintiffs assert that the discovery rule applies, at least to Section 28-3-105, which they claim was in effect when their cause of action accrued. The plaintiffs rely upon a 1995 unreported decision in which the Court of Appeals employed the discovery rule to hold that the statute of limitations for a claim of conversion of a negotiable instruments begins to run "when the plaintiff knew or reasonably should have known that a cause of action existed." Pacific Properties v. Home Federal Bank, 1995 WL 59112, *4 (Tenn. Ct. App. 1995) (no. perm. app. filed). The plaintiffs urge this Court to adopt the holding of Pacific Properties, and in particular, at least adopt this holding as to Section 28-3-105, the pre-1996 statute. We decline.

As the defendant points out, this Court is not bound by unpublished decisions of the Court of Appeals. Tenn. Sup. Ct. R. 4.(H)(1). While litigants generally may rely upon unpublished opinions as persuasive authority, the reasoning of Pacific Properties is not persuasive as to the particular issue in this appeal. In that case, the intermediate court engaged in the following analysis:

> The phrase "from the accruing of the cause of action," as set forth in T.C.A. § 28-3-105, "means from the time when the plaintiff knew or reasonably should have known that a cause of action existed." Stone v. Hinds, 541 S.W.2d 598 at 599 (Tenn. App. 1976). See also Prescott v. Adams, 627 S.W.2d 134, 138 (Tenn. App. 1981). "[T]he statute is tolled only during the period when the plaintiff has no knowledge at all that a wrong has occurred, and, as a reasonable person is not put on inquiry." Hoffman v. Hospital Affiliates, Inc., 652 S.W.2d 341, 344 (Tenn. 1983).

The Court of Appeals clearly did not employ the analysis approved by this Court for determining

whether or not the discovery rule applies to a particular statute of limitations. See Quality Auto Parts Co. Inc., 876 S.W.2d at 818. As a result, the Court of Appeals relied exclusively upon personal injury and medical malpractice tort cases and failed to consider the authority from other jurisdictions refusing to apply the discovery rule to actions for conversion of negotiable instruments. In view of these omissions, we are unpersuaded by the reasoning in Pacific Properties and are convinced that the Court of Appeals reached the wrong result.

Although a few courts have applied the discovery rule in this context,[2] the vast majority of courts hold that in the absence of fraudulent concealment on the part of the defendant asserting the statute-of-limitations defense, the discovery rule does not apply to toll the statute of limitations on an action for conversion of negotiable instruments. See, e.g., Menichini v. Grant, 995 F.2d 1224, 1230-31 (3rd Cir. 1993); Kuwait Airways Corp. v. American Security Bank, 890 F.2d 456, 461-63 (D.C. Cir. 1989); Stefano v. First Union Nat'l Bank of Virginia, 981 F.Supp. 417, 421 (E.D. Va. 1997); Haddad's of Illinois, Inc. v. Credit Union 1 Credit Union, 678 N.E.2d 322, 325-26 (Ill. App. Ct. 1997); Husker News Co. v. Mahaska State Bank, 460 N.W.2d 476, 477-78 (Iowa 1990); Insurance Co. of North Am. v. Manufacturers Bank of Southfield, 338 N.W.2d 214, 216 (Mich Ct. App. 1983); Smith v. Franklin Custodian Funds, Inc., 726 So.2d 144, 148 (Miss. 1998); Yarbro, Ltd. v. Missoula Federal Credit Union, 50 P.3d. 150, 162-64 (Mont. 2002); Gerber v. Manufacturers Hanover Trust Co., 315 N.Y.S.2d 601, 603 (N.Y. Civ. Ct. 1970); Palmer Mfg. and Supply, Inc. v. BancOhio Nat'l Bank, 637 N.E.2d 386, 389-91 (Ohio Ct. App. 1994); Fuscellaro v. Industrial Nat'l Corp., 368 A.2d 1227, 1231 (R.I. 1977); Wang v. Farmers State Bank of Winner, 447 N.W.2d 516, 518 (S.D. 1989); Lyco Acquisition 1984, L.P. v. The First Nat'l Bank of Amarillo, 860 S.W.2d 117, 119 (Tex. Ct. App. 1993).

The majority view is primarily grounded upon two principles. First is the commercial policies underlying the Uniform Commercial Code that militate strongly against open-ended liability on negotiable instruments. As the Third Circuit explained:

> [T]he utility of negotiable instruments lies in their ability to be readily accepted by creditors as payment for indebtedness. Checks must be transferable. Consequently, "in structuring the law of checks, we . . . seek to enhance the negotiability of commercial paper so that it may play its role as a money substitute." Robert Hillman, et al., Common Law and Equity Under the Uniform Commerical Code, P 14.01[1] (1985). Negotiability requires predictable and rapid collection through payment channels.
>
> Closely related to negotiability are commercial finality and certainty. "The finality of transactions promoted by an ascertainable definite period of liability is essential to the free negotiability of instruments on which commercial welfare so

---

[2]DeHart v. First Fidelity Bank, N.A./ South Jersey, 67 Bankr. 740, 743-46 (D.N.J. 1986); UNR-Rohn, Inc., v. Summit Bank, 687 N.E.2d 235 (Ind. Ct. App. 1997); Stjernholm v. Life Ins. Co. of N. Am., 782 P.2d 810, 811-12 (Colo. Ct. App. 1989).

heavily depends." Fuscellaro v. Industrial Nat'l Corp., 368 A.2d 1227, 1231 (1977); [statutory citation omitted].

* * * *

The Code drafters sought quick and inexpensive resolution of commercial disputes. This overarching goal is particularly important with negotiable instruments where the exigencies of commerce require inexpensive, quick, and reliable transfer of funds. When the only legally significant temporal events are the time of injury and the time of filing, the issue whether the statute of limitations bars an action becomes a relatively simple determination capable of resolution on the basis of judicial pleadings.

Menichini, 995 F.2d at 1230-31; see also Haddad's of Illinois, Inc., 678 N.E.2d at 326 ("The use of negotiable instruments was intended to facilitate the rapid flow of commerce. This policy is best served by finding the accrual of a cause of action for conversion of negotiable instruments occurs when the instrument is negotiated."); Husker News Co., 460 N.W.2d at 479 ("Strict application of the limitation period, while predictably harsh in some cases, best serves the twin goals of swift resolution of controversies and 'certainty of liability' advanced by the [Code].").

The second reason often cited by courts adopting the majority view is that a claim for conversion of negotiable instruments is unlike other claims to which the discovery rule has been applied. For example, the discovery rule generally has been applied where the actual injury does not manifest itself until years after the tortious conduct occurred and long after the statute of limitations expired. Qualify Auto Parts Co. Inc., 876 S.W.2d at 822. In contrast, the tort of conversion is complete and the injury occurs at the moment the tortfeasor appropriates the plaintiff's property to his or her own use or benefit by exercising dominion over it in violation of the true owner's right. See Barger v. Webb, 391 S.W.2d 664, 665 (Tenn. 1965); General Electric Credit Corp. of Tennessee v. Kelly & Dearing Aviation, 765 S.W.2d 750, 753 (Tenn. Ct. App. 1988). When the property converted is a negotiable instrument, the damage is done, and the tort is complete when the instrument is negotiated, regardless of the plaintiff's ignorance of the conversion. See, e.g., Menichini, 995 F.2d at 1231-31; Kuwait Airways Corp., 890 F.2d at 462; Haddad's of Illinois, Inc., 678 N.E.2d at 326; Yarbro, Ltd., 50 P.3d at 163. Moreover, the law of conversion presumes that property owners know what their assets are and where they are located. See, e.g., Fuscellaro, 368 A.2d at 1231. The law therefore presumes that the plaintiff is not ignorant of the conversion. Unlike other situations in which the discovery rule has been applied, persons alleging conversion, and particularly conversion of a negotiable instrument, generally should be able to easily and quickly detect the loss and take appropriate action. Having considered the authority, we agree with the Iowa Supreme Court's assessment:

As tempting a choice as that may be in an individual case [applying the discovery rule], we think the public would be poorly served by a rule that effectively shifts the responsibility for careful bookkeeping away from those in the best position to monitor accounts and employees. Strict application of the limitations period, while predictably harsh in some cases, best serves the twin goals of swift resolution of

controversies and "certainty of liability" advanced by the [Uniform Commercial Code].

Husker News Co., 460 N.W.2d at 479; see also Menichini, 995 F.2d at 1231-31; Kuwait Airways Corp., 890 F.2d at 462; Haddad's of Illinois, Inc., 678 N.E.2d at 326; Yabro, Ltd., 50 P.3d at 264; Palmer Mfg. & Supply, Inc., 637 N.E.2d at 390-91; Fuscellaro, 368 A.2d at 1231.

Not applying the discovery rule may very well be harsh in certain cases, but we are persuaded by the reasoning of the majority view. Negotiable instruments are intended to facilitate the rapid flow of commerce by providing certainty and finality in commercial transactions. These policies are best served by refusing to apply the discovery rule and by finding that the cause of action for conversion of negotiable instruments accrues when the instrument is negotiated. Of course, adoption of the majority rule also fosters uniformity, which is a fundamental objective of the Uniform Commercial Code and the TUCC. See Tenn. Code Ann. § 47-1-102(2)(c)(stating that one objective is "to make uniform the law among the various jurisdictions").

In addition, the nature of the tort of conversion militates against application of the discovery rule. Conversion is complete and the damage to the plaintiff occurs at the moment an instrument is negotiated. Both Section 28-3-105 and Section 118(g) afford a plaintiff three years from the time the instrument is negotiated to discover the claim and file suit. Absent fraudulent concealment, three years should be more than ample time for a plaintiff to discover a conversion claim. Extending the statute by application of the discovery rule would place defendants in the untenable position of having to defend against stale claims. Fuscellaro, 368 A.2d at 1231. This case presents an excellent example of the difficulties that arise when the discovery rule is applied in this context. The plaintiffs' complaint was filed approximately eight years after the first checks were allegedly converted. Memories had dimmed and records had been lost or destroyed in the ordinary course of business. Records were not available for any transactions occurring prior to February 1990, so First Tennessee was unable to offer proof that the plaintiffs had received the benefit of some of the proceeds from the pre-1990 checks. First Tennessee was able to offer such proof as to the more recent checks allegedly converted.

For all these reasons, we hold that the discovery rule does not apply to toll the statute of limitations for claims of conversion of negotiable instruments. In the absence of fraudulent concealment, such claims accrue and the statute begins to run when the instrument is negotiated. This conclusion applies to the former statute, Tennessee Code Annotated section 28-3-105, as well as the current statute, Tennessee Code Annotated section 47-3-118(g). Therefore, the trial court's judgment granting First Tennessee partial summary judgment was appropriate unless First Tennessee engaged in fraudulent concealment which tolled the statute of limitations.

**Fraudulent Concealment**

In Shadrick v. Coker, 963 S.W.2d 726 (Tenn. 1998), this Court explained that to establish fraudulent concealment, a plaintiff must prove the following: (1) that the defendant took affirmative

action to conceal the cause of action or remained silent and failed to disclose material facts despite a duty to do so; (2) that the plaintiff could not have discovered the cause of action despite exercising reasonable care and diligence; (3) that the defendant had knowledge of the facts giving rise to the cause of action; and (4) that the defendant concealed material facts from the plaintiff by withholding information or making use of some device to mislead the plaintiff, or by failing to disclose information when he or she had a duty to do so. Id. at 735-36.

As previously stated, the trial court concluded that the checks were "special deposits" that gave rise to a fiduciary duty between the plaintiffs and First Tennessee. Nonetheless, the trial court found that by exercising reasonable care and diligence, the plaintiffs should have discovered the cause of action no later than February 3, 1992. Therefore, the trial court found that the plaintiffs had failed to establish a genuine issue of material fact as to the second required element of fraudulent concealment. The Court of Appeals affirmed stating simply that, "the plaintiffs have neither pled nor offered evidence to establish a prima facie case of fraudulent concealment." Having reviewed the entire record of the prior trial upon which the grant of partial summary judgment was based, we agree with the lower courts that the plaintiffs have failed to establish a genuine issue of material fact as to fraudulent concealment. Even assuming a genuine issue of material fact exists as to the other required elements, our review of the voluminous record reveals that no genuine issue of material fact exists as to First Tennessee having "had knowledge of the facts giving rise to the cause of action." The plaintiffs' assertion that, for purposes of fraudulent concealment, First Tennessee should be charged with such knowledge because it had a duty to inquire as to the maker's intent with respect to the special deposits is without merit. Fraudulent concealment requires proof of actual knowledge. See Ray v. Scheibert, 484 S.W.2d 63, 72 (Tenn. Ct. App.) (cert. denied 1972) (cited with approval Benton v. Snyder, 825 S.W.2d 409, 414 (Tenn. 1992); Whaley v. Catlett, 103 Tenn. 347, 356, 53 S.W. 131, 134 (1899) ("Certainly, we would not be justified in assuming fraud in order to prevent the running of the statute of limitations."). This record contains no proof indicating that First Tennessee had actual knowledge that Lee was mishandling the plaintiffs' checks. Instead, the facts indicate that First Tennessee was negligent in following its own procedures, and as a result, lacked knowledge of the facts giving rise to the cause of action. See Whaley, 103 Tenn. at 356, 53 S.W. at 134 ("The averment that the failure to disclose the breach of duty was careless and negligent implies a lack of knowledge on the part of the defendant rather than otherwise."). Because there is no genuine issue of material fact as to one of the required elements of fraudulent concealment, summary judgment in favor of First Tennessee was appropriately granted. See Robinson v. Omer, 952 S.W.2d 423 (Tenn. 1997) (affirming the grant of summary judgment where the defendant negated an essential element of the plaintiff's claim).

**Conclusion**

After fully and carefully considering the record and the relevant authorities, we conclude that the discovery rule does not apply to toll the statute of limitations when the claim alleged is conversion of a negotiable instrument. This conclusion applies both to the former statute of limitations, Tennessee Code Annotated section 28-3-105, and to the current statute of limitations, Tennessee Code Annotated section 47-3-118(g). Therefore, in the absence of fraudulent concealment, a cause of action for conversion of a negotiable instrument accrues, and the statute of

-11-

limitations begins to run, when the instrument is negotiated. Because there is no genuine issue of material fact as to a required element of fraudulent concealment, summary judgment was appropriate. Accordingly, the judgment of the Court of Appeals affirming the trial court's judgment granting partial summary judgment to First Tennessee is affirmed on the separate grounds stated herein. This case is remanded to the trial court for any further necessary proceedings. Costs of this appeal are taxed to the plaintiffs Pero's Steak and Spaghetti House and Louis Inn, for which execution may issue if necessary.

_____
FRANK F. DROWOTA, III, CHIEF JUSTICE