# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
November 15, 2012 Session

## ALISA LEIGH ELDRIGE, ET AL. v. LEE SAVAGE

**Direct Appeal from the Circuit Court for Overton County**
**No. 2012CV49     John Maddux, Judge**

**No. M2012-00973-COA-R3-CV - Filed December 28, 2012**

This case involves the sale of a home in 1994.  The purchaser and her husband filed a complaint against the seller, alleging that they discovered extensive fire damage to the home in 2010.  The complaint alleged misrepresentation, mistake, and violation of the Tennessee Consumer Protection Act.  The trial court granted the seller's Rule 12 motion to dismiss on the basis that the claims were barred by various statutes of limitations, as the trial court found that the discovery rule was inapplicable.  We find that the allegations in the complaint were sufficient to survive a Rule 12 motion to dismiss, as they implicate the discovery rule and the doctrine of fraudulent concealment.  Therefore, we reverse in part the order of dismissal, to the extent that the purchaser's claims were dismissed on the basis of the statutes of limitations, and we remand for further proceedings.  We affirm in part the portion of the trial court's order that addressed a separate issue, as that ruling was not challenged on appeal.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Reversed in Part, Affirmed in Part and Remanded**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Michael R. Giaimo, Cookeville, Tennessee, for the appellant, Alisa Leigh Elidridge

Craig P. Fickling, Cookeville, Tennessee; John R. Officer, Livingston, Tennessee, for the appellee, Lee Savage

**OPINION**

## I. FACTS & PROCEDURAL HISTORY

Alisa Leigh Eldridge purchased a home from Lee Savage ("Defendant") in 1994.[1] The home had previously been damaged in a fire, and it is undisputed that Mrs. Eldridge and her husband (sometimes hereinafter "Plaintiffs") were aware of this fact. When Mr. and Mrs. Eldridge inspected the home, there was very little visible damage from the fire. In fact, they could not discern any noticeable fire damage other than some scorched, heat-damaged cabinet doors and a burnt floor joist in the basement. Defendant told the Eldridges that he had repaired all of the fire damage, and he assured them that the home was livable. The Eldridges relied upon Defendant's statements that he had repaired the fire damage in deciding to purchase the home.

After the purchase of the home, Mr. and Mrs. Eldridge had two children. The oldest child developed chronic respiratory problems that progressively worsened. In January 2010, when the child was about nine years old, specialists at Vanderbilt University Hospital advised the Eldridges that environmental conditions must be causing or contributing to her condition. The specialists were suspicious of mold and directed the Eldridges to scrub down the entire house with bleach. In February 2010, Mrs. Eldridge was scrubbing the kitchen cabinets with bleach when she noticed "black soot" appearing on the surface. The more she scrubbed, the more soot appeared, and there was a terrible odor. The Eldridges subsequently discovered "extensive fire damage" behind the cabinets, in the walls, and underneath the linoleum floor. Charred flooring was found just beneath the linoleum installed by Defendant. The Eldridges found that smoke-damaged walls had been simply painted over, and the home's HVAC return was filled with soot. The Eldridges' doctors and the Federal Housing Administration declared the home to be unlivable, and the Eldridges were forced to move. However, they were still obligated to pay the mortgage on the home.

On August 12, 2010, Mr. and Mrs. Eldridge filed a complaint against Defendant, alleging several causes of action. They alleged intentional and/or negligent misrepresentation, claiming that Defendant had made false statements of fact regarding the nature and extent of the fire damage and the subsequent repairs to the home. The Eldridges alleged that they had relied upon Defendant's express statements that he had repaired the fire damage, and they claimed that they had acted reasonably and as prudent persons in their inspection and purchase of the home. The Eldridges further asserted that Defendant's actions were unfair and deceptive, and therefore a violation of the Tennessee Consumer Protection

---

[1] The facts set forth in this opinion are taken from the complaint, because this case was resolved on a Rule 12.02(6) motion to dismiss.

Act ("TCPA"), as Defendant was, upon information and belief, involved in a commercial enterprise of purchasing properties purely for resale. Plaintiffs sought compensatory, punitive, and/or treble damages.[2] Finally, the Eldridges argued, in the alternative, that the parties were operating under a mutual misunderstanding or mistake regarding the nature and extent of the fire damage, which would justify rescission of the original contract and sale.

Defendant filed a motion to dismiss the complaint on the basis that all of the claims asserted were time-barred. Because the complaint was filed in 2010, and it involved a sale of property in 1994, Defendant contended that the misrepresentation claims were barred by the three year statute of limitations for injuries to real property, Tenn. Code Ann. § 28-3-105; the TCPA claim was barred by the one year statute of limitations set forth in the Act itself, Tenn. Code Ann. § 47-18-110; and the claim for rescission was barred by the ten year statute of limitations for equitable claims, Tenn. Code Ann. § 28-3-110. Defendant argued that the Eldridges' claims were not tolled by the discovery rule because "[they] should have noticed any fire damage in 1994." He claimed that the Eldridges "were obligated to use reasonable care and diligence to discover any alleged fire damage" at the time of the purchase or shortly thereafter. Defendant further argued that the doctrine of fraudulent concealment should not toll the statutes of limitations in this case because the complaint did not allege fraudulent concealment.[3] Finally, Defendant argued that the action should be dismissed as to Plaintiff Larry Eldridge, as he was not the purchaser of the property, Mrs. Eldridge was.

In response to the motion to dismiss, Plaintiffs conceded that the various statutes of limitations cited by Defendant were applicable to the claims set forth in their complaint. However, Plaintiffs argued that the issue of whether the discovery rule tolled the statutes of limitations, or more specifically, whether they exercised due diligence in discovering their injury in a timely manner, was a fact question that should not be decided based on a motion to dismiss. Plaintiffs also argued that a liberal construction of their complaint alleged fraudulent concealment.

After hearing arguments from counsel on the motion to dismiss, the trial court entered an order granting the motion and dismissing the complaint. The court first found that Plaintiff Larry Eldridge acquired no interest in the property at the time of the transaction, as the conveyance was solely to Plaintiff Alisa Eldridge, and therefore, the court granted the

---

[2] It is undisputed that the complaint did not seek to recover damages for any personal injuries; it only sought recovery for damage to property.

[3] In the motion to dismiss, Defendant also argued that the Eldridges' claim under the TCPA was barred pursuant to the five year statute of repose found in Tenn. Code Ann. § 47-18-110. However, the trial court did not base its ruling on this issue, and the Defendant does not argue on appeal that dismissal was appropriate on that basis. Therefore, this opinion does not address the applicability of any statute of repose.

motion to dismiss "as to him as a Plaintiff."  This finding is not challenged on appeal.

Next, with regard to the timeliness of the claims asserted by Plaintiff Alisa Eldridge, the court found that Mrs. Eldridge was aware, when she purchased the home in 1994, that the home had fire damage, and therefore, "it was her mistake not to look into the matter further."  The court explained, "The question for the Court is whether the facts as acknowledged by the Plaintiff in the Complaint were sufficient to put a reasonable person on notice that she may have a cause of action.  The Court finds that they were and that the discovery rule in this case does not toll [the] applicable statutes of limitation."  Mrs. Eldridge timely filed a notice of appeal.[4]

## II.  ISSUE PRESENTED

On appeal, Mrs. Eldridge basically argues that the allegations in her complaint were sufficient to survive a motion to dismiss because they implicated the discovery rule and the tolling doctrine of fraudulent concealment.  We agree with Plaintiff's contention that dismissal of the complaint was premature, and therefore, we reverse the trial court's order of dismissal in part, to the extent that it was based on the statute of limitations, and remand for further proceedings.  The portion of the order dismissing the claims asserted by Mr. Eldridge, which was not challenged on appeal, is hereby affirmed.

## III.  STANDARD OF REVIEW

A motion filed under Rule 12.02(6) of the Tennessee Rules of Civil Procedure "is an appropriate way to seek to invoke the statute of limitations as grounds for dismissing a complaint." *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 455-56 n.11 (Tenn. 2012) (citing *Hawk v. Chattanooga Orthopaedic Grp., P.C.*, 45 S.W.3d 24, 28 (Tenn. Ct. App. 2000); 1 Lawrence A. Pivnick, *Tennessee Circuit Court Practice* § 11:3, at 857-58 (2011 ed.)).  However, this type of motion "tests only the legal sufficiency of the plaintiff's complaint," not the strength of the plaintiff's proof or evidence. *Id.* at 455 (citing *Highwoods Props., Inc. v. City of Memphis*, 297 S.W.3d 695, 700 (Tenn. 2009)).  Thus, we resolve a motion to dismiss by an examination of the pleadings alone. *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011).  "A defendant who files a motion to dismiss 'admits the truth of all of the relevant and material allegations

---

[4]  We note that Mr. Eldridge's name was also listed on the notice of appeal.  However, the appellate brief filed on behalf of the Eldridges did not present any argument to challenge the portion of the trial court's order dismissing Mr. Eldridge as a plaintiff because he had no interest in the property.  It only challenged the portion of the order dismissing the claims filed by Mrs. Eldridge as untimely.  For clarity, in discussing this issue, we will proceed as if Mrs. Eldridge was the only appellant.

contained in the complaint, but . . . asserts that the allegations fail to establish a cause of action.'" *Id.* (quoting *Brown v. Tenn. Title Loans, Inc.*, 328 S.W.3d 850, 854 (Tenn. 2010)). At this early stage of the proceedings, courts "'must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences.'" *Id.* (quoting *Tigg v. Pirelli Tire Corp.*, 232 S.W.3d 28, 31-32 (Tenn. 2007)). The motion to dismiss should be granted "'only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.'" *Id.* (quoting *Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 857 (Tenn. 2002)). This is because we are "assessing the sufficiency of a single document filed at the very beginning of a case," and "[o]ur motion-to-dismiss jurisprudence reflects the principle that this stage of the proceedings is particularly ill-suited for an evaluation of the likelihood of success on the merits or of the weight of the facts pleaded." *Id.* at 437.

On appeal, a trial court's legal conclusion regarding the adequacy of the complaint is reviewed de novo. *Webb*, 346 S.W.3d at 426. Likewise, "[t]he determination of whether a suit should be dismissed based on the statute of limitations presents a question of law which we review de novo with no presumption of correctness." *Redwing*, 363 S.W.3d at 456 (citing *Fahrner v. SW Mfg., Inc.*, 48 S.W.3d 141, 144 (Tenn. 2001)).

## IV. DISCUSSION

"Statutes of limitations promote fairness and justice." *Redwing*, 363 S.W.3d at 457 (citing *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 621 (Tenn. 2002)). They "reflect 'a societal choice that actions must be brought within a certain time period.'" *Id.* (quoting *Parrish v. Marquis*, 172 S.W.3d 526, 532 (Tenn. 2005)). "They are based on the presumption that persons with the legal capacity to litigate will not delay bringing suit on a meritorious claim beyond a reasonable time." *Id.* (citing *Hackworth v. Ralston Purina Co.*, 214 Tenn. 506, 510, 381 S.W.2d 292, 294 (1964)).

"A defense predicated on the statute of limitations triggers the consideration of three components—the length of the limitations period, the accrual of the cause of action, and the applicability of any relevant tolling doctrines." *Redwing*, 363 S.W.3d at 457. "The length of the limitations period is perhaps the most straightforward of the three elements," and it is determined by considering the "gravamen" of the complaint. *Id.* Here, the parties agree that the applicable statutes of limitations were those cited in Defendant's motion to dismiss.

The second component, the concept of accrual, "relates to the date on which the applicable statute of limitations begins to run." *Id.* (citing *Columbian Mut. Life Ins. Co. v. Martin*, 175 Tenn. 517, 526, 136 S.W.2d 52, 56 (1940)). Under the current discovery rule, a cause of action accrues and the statute of limitations begins to run when the plaintiff has

either actual or constructive knowledge of a claim.[5] *Id.* at 459. However, the discovery rule does not allow the plaintiff to delay filing suit until he knows the full extent of his damages, or the specific type of legal claim he has. *Id.* Constructive or "inquiry" notice occurs "when the plaintiff has actual knowledge of facts sufficient to put a reasonable person on notice that he or she has suffered an injury as a result of wrongful conduct." *Id.* (internal quotation and alteration omitted). In other words, "inquiry notice 'charges a plaintiff with knowledge of those facts that a reasonable investigation would have disclosed.'" *Id.* (quoting *Sherrill v. Souder*, 325 S.W.3d 584, 593 n.7 (Tenn. 2010)). Once the plaintiff "gains information sufficient to alert a reasonable person of the need to investigate the injury, the limitation period begins to run." *Id.*

As for the third component, there are various tolling doctrines that can suspend or extend the running of the limitations period. *Redwing*, 363 S.W.3d at 459. Tennessee courts have long recognized that the doctrine of fraudulent concealment will toll the running of a statute of limitations. *Id.* at 461. The doctrine of fraudulent concealment applies to toll the statute of limitations when "'the defendant has taken steps to prevent the plaintiff from discovering he [or she] was injured.'"[6] *Id.* at 462 (quoting *Fahrner*, 48 S.W.3d at 146). Stated differently, it applies "to circumstances in which the defendant purposefully engages in conduct intended to conceal the plaintiff's injury from the plaintiff."[7] *Id.* A plaintiff

---

[5] Under the traditional accrual rule, a cause of action accrued and the applicable statute of limitations began to run when the plaintiff had a cause of action and the right to sue, even though the plaintiff may have had no knowledge of his right to sue, or the facts out of which that right arose. *Redwing*, 363 S.W.3d at 457. However, as time passed, it became apparent that the policies furthered by statutes of limitations should give way when the interests of justice would be served by permitting the pursuit of legitimate claims. *Id.* at 458. As a result, "courts and legislatures began to recognize exceptions to the traditional accrual rules that 'take the sting out of a statute of limitations for equitable reasons.'" *Id.* (quoting Adam Bain & Ugo Colella, Interpreting Federal Statutes of Limitations, 37 Creighton L. Rev. 493, 502 (2004)). In 1974, the Tennessee Supreme Court adopted the "discovery rule" rule, in response to the harsh results of the traditional accrual rule, in circumstances in which the injured party was unaware of the injury. *Id.* In short, "the discovery rule was developed to prevent plaintiffs from being barred from filing a claim before they even knew it existed." *Young v. Enerpac*, 299 S.W.3d 815, 817 (Tenn. Ct. App. 2009).

[6] "As it currently exists in Tennessee, the doctrine of fraudulent concealment is aligned with the discovery rule." *Redwing*, 363 S.W.3d at 462. For instance, "[i]n a discovery rule case, the plaintiff may claim that the defendant intentionally prevented him from discovering his injury," and if that claim is proved true, "the doctrine of fraudulent concealment applies." *Id.* at 462 n.26. "For the purposes of both the discovery rule and the doctrine of fraudulent concealment, the pivotal issue is whether [the plaintiff] would have discovered the [defendant's] allegedly wrongful acts had he exercised reasonable care and diligence." *Id.* at 466.

[7] The doctrine of fraudulent concealment also applies "to circumstances in which the defendant (continued...)

invoking the fraudulent concealment doctrine must allege and prove four elements:

> (1) that the defendant affirmatively concealed the plaintiff's injury or the identity of the wrongdoer or failed to disclose material facts regarding the injury or the wrongdoer despite a duty to do so;
> (2) that the plaintiff could not have discovered the injury or the identity of the wrongdoer despite reasonable care and diligence;
> (3) that the defendant knew that the plaintiff had been injured and the identity of the wrongdoer; and
> (4) that the defendant concealed material information from the plaintiff by withholding information or making use of some device to mislead the plaintiff in order to exclude suspicion or prevent inquiry.

*Id.* at 462-63 (footnotes omitted). "The statute of limitations is tolled until the plaintiff discovers or, in the exercise of reasonable diligence, should have discovered the defendant's fraudulent concealment or sufficient facts to put the plaintiff on actual or inquiry notice of his or her claim." *Id.* at 463. "At the point when the plaintiff discovers or should have discovered the defendant's fraudulent concealment or sufficient facts to put the plaintiff on actual or inquiry notice of his or her claim, the original statute of limitations begins to run anew, and the plaintiff must file his or her claim within the statutory limitations period." *Id.*

In the case at bar, there is no dispute that Defendant made out a prima facie defense based on various statutes of limitations, and therefore, "the question before us is whether the factual allegations in [the Plaintiff's] complaint regarding the statute of limitations issue are sufficient to survive a Tenn. R. Civ. P. 12.02(6) motion to dismiss." *See Redwing*, 363 S.W.3d at 463. When the undisputed facts establish a statute of limitations defense, "the burden shifts to [the plaintiff] to demonstrate that the allegations in [the] complaint are sufficient to articulate at least a colorable basis for concluding that the statute of limitations has not run on his claims." *Id.*

As noted above, "[f]or the purposes of both the discovery rule and the doctrine of fraudulent concealment, the pivotal issue is whether [the plaintiff] would have discovered the [defendant's] allegedly wrongful acts had he exercised reasonable care and diligence." *Id.* at 466. "Whether the plaintiff exercised reasonable care and diligence in discovering the injury or wrong is usually a fact question for the jury to determine." *Wyatt v. A-Best Co.*, 910 S.W.2d 851, 854 (Tenn. 1995); *see also Gerdau Ameristeel, Inc. v. Ratliff*, 368 S.W.3d

---

[7](...continued)
engages in conduct intended to conceal the identity of the person or persons who caused the plaintiff's injury from the plaintiff." *Redwing*, 363 S.W.3d at 462.

503, 509 (Tenn. 2012). "However, where the undisputed facts demonstrate that no reasonable trier of fact could conclude that a plaintiff did not know, or in the exercise of reasonable care and diligence should not have known, that he or she was injured as a result of the defendant's wrongful conduct, Tennessee case law has established that judgment on the pleadings or dismissal of the complaint is appropriate." ***Schmank v. Sonic Automotive, Inc.***, No. E2007-01857-COA-R3-CV, 2008 WL 2078076, at *3 (Tenn. Ct. App. May 16, 2008) (citing *Roe v. Jefferson*, 875 S.W.2d 653, 658 (Tenn. 1994) (affirming summary judgment where "no reasonable trier of fact could find that [plaintiff] was unaware that she had suffered an injury for purposes of the discovery rule"); *Stanbury v. Bacardi*, 953 S.W.2d 671, 677-78 (Tenn. 1997) (affirming dismissal of complaint where plaintiff held to have been "aware of facts sufficient to put a reasonable person on notice that she had suffered an injury" despite her assertion that she did not discover her claim until later); *Brandt v. McCord*, No. M2007-00312-COA-R3-CV, 2008 WL 820533, at *4 (Tenn. Ct. App. Mar. 26, 2008) (affirming dismissal of complaint where facts established "as a matter of law" that plaintiffs had enough knowledge to put a reasonable person on notice, despite plaintiffs' invocation of discovery rule)).

According to the allegations stated in the complaint filed by Mrs. Eldridge, which we must accept as true at this juncture, the Eldridges inspected the home prior to purchasing it and found very little visible damage from the fire. The only noticeable fire damage was a burnt floor joist in the basement and some scorched, heat damaged cabinet doors. Defendant told the Eldridges that he had "repaired" all of the fire damage, and he assured them that the home was livable. Plaintiff relied on Defendant's statements and, according to the complaint, she acted reasonably and as a prudent person in the inspection and purchase of the home. It was not until 2010, when Plaintiff scrubbed the kitchen cabinets with bleach, at the doctors' instruction, that she discovered "black soot" appearing on the surface of the cabinets, along with a terrible odor. Upon further investigation, Plaintiff found "extensive fire damage behind the cabinets, in the walls and just underneath the linoleum floor." Charred flooring lay just beneath the linoleum installed by Defendant, smoke damaged walls "were merely painted over with fresh paint," and the HVAC return was filled with soot. Upon this discovery, the FHA and the Eldridges' doctors declared that the home was in fact *unlivable*, and they were forced to move.

In the complaint, Plaintiff alleged that Defendant made false statements of fact "regarding the nature and extent of the fire damage and subsequent repairs to the home." Construing the complaint liberally, presuming all factual allegations to be true, and giving the Plaintiff the benefit of all reasonable inferences, it is not apparent from the face of the complaint that Plaintiff "can prove no set of facts in support of the claim that would entitle [her] to relief." *See **Webb***, 346 S.W.3d at 438. Considering Plaintiff's allegations in their best light, they would, if proven, provide a basis for a reasonable fact-finder to conclude that

the Plaintiff acted with reasonable diligence and, therefore, she should not be held to have known of the allegedly concealed fire damage at the time of purchase. The allegations could also provide a basis for a reasonable fact-finder to conclude that Defendant fraudulently concealed the fire damage, thereby tolling the statutes of limitations. We reject the Defendant's argument that the Plaintiff had constructive notice of the injury simply by reason of the fact that she knew a fire had occurred at the home. The statute of limitations begins to run "when the plaintiff has actual knowledge of a claim" or of "facts sufficient to put a reasonable person on notice that he [or she] has suffered an *injury as a result of wrongful conduct*." **Redwing**, 363 S.W.3d at 459 (emphasis added). True, Plaintiff knew at the time of purchase that a fire had occurred at the home. However, she is not suing Defendant for that reason alone. The basis of this lawsuit is that Defendant made false statements regarding "the nature and extent of the fire damage and subsequent repairs to the home." At this stage of the proceedings, there is nothing to indicate that a reasonable person would have discovered the allegedly concealed fire damage, which was "behind the cabinets, in the walls and just underneath the linoleum floor," prior to when it was discovered by Plaintiff. Therefore, it was premature for the trial court to dismiss Mrs. Eldridge's complaint for failing to exercise reasonable diligence in discovering her injury.

## V. CONCLUSION

For the aforementioned reasons, we reverse in part the decision of the circuit court, to the extent that the order dismissed the complaint on the basis of the statutes of limitations, and we remand for further proceedings. The portion of the order dismissing the claims asserted by Mr. Eldridge, which was not challenged on appeal, is affirmed. Costs of this appeal are taxed to the appellee, Lee Savage, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.