IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 6, 2019 Session

## SNAKE STEEL, INC. v. HOLLADAY CONSTRUCTION GROUP, LLC

Appeal from the Chancery Court for Davidson County
No. 17-1037-III     Ellen H. Lyle, Chancellor

_____

### No. M2019-00322-COA-R3-CV

_____

A subcontractor sought statutory penalties against a prime contractor based on the contractor's failure to comply with the Prompt Pay Act's requirement that any retainage withheld be deposited into an interest-bearing escrow account as set forth in Tenn. Code Ann. § 66-34-104(a).  The prime contractor moved to dismiss the complaint, asserting that the claim was barred by the one-year statute of limitations applicable to statutory penalties, Tenn. Code Ann. § 28-3-104(a)(1)(C).  The trial court granted the prime contractor's motion and dismissed the complaint.  On appeal, we hold that the discovery rule applies to this type of claim for statutory penalties under the Prompt Pay Act and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated
and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which W. NEAL MCBRAYER and CARMA DENNIS MCGEE, JJ., joined.

Dan E. Huffstutter, Nashville, Tennessee, for the appellant, Snake Steel, Inc.

Gregory L. Cashion and Petar A. Angelov, Nashville, Tennessee, for the appellee, Holladay Construction Group, LLC.

## OPINION

### I. FACTUAL AND PROCEDURAL BACKGROUND

Snake Steel, Inc. ("SSI") was a subcontractor responsible for providing structural and miscellaneous steel on a large construction project in Nashville.  Holladay Construction Group, LLC ("HCG") was the general, or prime, contractor for the project.  The contract between SSI and HCG was dated October 8, 2013, and it provided that HCG

would pay SSI a total of $336,722. HCG was to make monthly payments to SSI, and the contract permitted five percent of each payment to be withheld ("retainage") until SSI substantially completed the work described in the contract. Once SSI's work was substantially complete, HCG was required to pay SSI its retainage. SSI expressly acknowledged that its payments from HCG were contingent upon HCG's receipt of payments from the owner of the project, 2200 Charlotte, Limited Liability Company ("the Owner").

The following facts are undisputed. The first payment HCG made to SSI was on October 25, 2013, and $1,146.50 was withheld as retainage at that time. SSI substantially completed its work on the project in September 2014. The total amount of SSI's retainage was $18,270.58. HCG paid SSI the full contract amount less the retainage on October 24, 2014. On May 1, 2015, HCG asked the Owner to release SSI's retainage, and the Owner released SSI's retainage to HCG on May 27, 2015. Until May 27, 2015, the Owner, not HCG, was in possession of SSI's retainage. On February 19, 2016, SSI submitted a pay application to HCG for its retainage. On September 12, 2017, SSI sent HCG a certified notice that it had not received its retainage.

On September 25, 2017, SSI filed its complaint against HCG. SSI asserted that HCG owed it $18,270.58 in retainage and $32,480 for additional work HCG authorized SSI to perform and for which SSI charged HCG in an unapproved change order. SSI alleged HCG breached the parties' contract by failing to pay SSI these amounts. It also alleged that HCG was liable to SSI for failing to comply with the requirements of the Prompt Pay Act of 1991 ("the PPA"), Tenn. Code Ann. §§ 66-34-101–205. SSI sought interest on the amount it claimed it was due as well as its reasonable attorney's fees and costs.

Under the PPA, construction contracts may provide for the withholding of retainage in the amount of up to five percent of the contract amount. Tenn. Code Ann. § 66-34-103(a). When the prime contract is $500,000 or greater, as was the case here, the PPA mandates that all retained amounts "shall be deposited in a separate, interest-bearing, escrow account with a third party which must be established upon the withholding of any retainage." *Id.* § 66-34-104(a), (i). The PPA directs that information regarding the escrow account is to be provided to the prime contractor:

> The party with the responsibility for depositing the retained amount in a separate, interest-bearing, escrow account with a third party shall have the affirmative duty to provide written notice that it has complied with the requirements of this section to any prime contractor upon withholding the amount of retained funds from each and every application for payment, including:

(1) Identification of the name of the financial institution with whom the escrow account has been established;

(2) Account number; and

(3) Amount of retained funds that are deposited in the escrow account with the third party.

*Id.* § 66-34-104(d). Compliance with Tenn. Code Ann. § 66-34-104 is "mandatory and may not be waived by contract." *Id.* § 66-34-104(j). The PPA imposes a $300-per-day penalty for failing to deposit the retained funds into such an account:

In the event that the party withholding the retained funds fails to deposit the funds into an escrow account as provided herein, such party shall be responsible for paying the owner of the retained funds an additional three hundred dollar ($300) penalty per day for each and every day that such retained funds are not deposited into such escrow account.

*Id.* § 66-34-104(c). The prime contractor is required to pay all retainages due any subcontractors "within ten (10) days after receipt of the retainages from the owner." *Id.* § 66-34-103(b). The parties do not dispute that the Owner failed to deposit SSI's retainage into an escrow account as required by the PPA. The parties also do not dispute that when HCG acquired SSI's retainage from the Owner on May 27, 2015, HCG failed to deposit SSI's retainage into such an escrow account.

Before responding to SSI's complaint, HCG tendered a check to SSI on October 27, 2017, in the amount of $18,270.58, which represented the full amount of SSI's retainage. SSI refused to accept the check. Then, on December 12, 2017, HCG tendered two checks to SSI: $18,270.58 for the retainage and $32,450 for the additional authorized work by SSI. SSI accepted both of these checks on December 12, 2017.

HCG answered the complaint, and in an amended answer it raised the affirmative defense that SSI's claim under the PPA was barred by the applicable statute of limitations. Both parties filed motions for summary judgment. HCG argued that the only substantive issues left to resolve were SSI's claims under the PPA, and that these claims were barred by the one-year statute of limitations applicable to statutory penalties. SSI contended that its PPA claims were governed by the six-year statute of limitations applicable to contracts because the gravamen of its complaint was based on the parties' contract.

The trial court held a hearing on the parties' cross motions and filed its decision on January 4, 2019. The court granted HCG's motion for summary judgment, but it awarded SSI $2,294.21 in interest pursuant to the PPA as well as attorney's fees incurred

- 3 -

starting from the date when SSI's attorneys began preparing its complaint through December 12, 2017, when both of SSI's breach of contract claims were resolved. The court concluded that the statute of limitations for SSI's PPA claim for $300-per-day penalties was governed by the one-year statute of limitations set forth in Tenn. Code Ann. § 28-3-104(a)(1). That statute provides, in pertinent part, as follows:

(a)(1) Except as provided in subdivision (a)(2), the following actions shall be commenced within one (1) year after the cause of action accrued:

. . .

(C) Actions for statutory penalties.

Tenn. Code Ann. § 28-3-104.[1] Subsection (3) of the statute states that "subsection (a) shall be strictly construed." *Id.* § 28-3-104(a)(3).

The trial court based its decision on the "plain, unambiguous wording of Tenn. Code Ann. § 66-34-104(c)," which uses the word "penalty" to describe the relief available to subcontractors whose retainage is not deposited into an interest-bearing escrow account in accordance with the PPA. The trial court wrote, "Use of the word 'penalty' in the statute, the Court concludes, fits within the explicit provision of the one-year statute of limitations of section 28-3-104(a)(1)(C) for actions for statutory penalties." The trial court then determined that SSI's claim for PPA penalties "accrued at the latest on February 19, 2016," when SSI submitted a pay application to HCG for its entire retainage amount. Because this date was one year, seven months, and six days before SSI filed its complaint, the court dismissed SSI's claim for penalties. The court explained how it arrived at the February 19, 2016 date:

February 19, 2016, is determined by the Court to be the "latest" accrual date because paragraph 5 of Kelly Blake's affidavit, Plaintiff's President and owner, filed August 10, 2018, in support of Plaintiff's motion for summary judgment, admits facts establishing an earlier accrual date, quoting the affidavit as follows, "During the fourth quarter of 2014, Snake Steel began trying to collect its retainage . . . ." There are also even earlier possible accrual dates to start the running of the section 28-3-104(a)(4) limitation period derived from the wording of the Prompt Pay Act. Section 66-34-104(c) specifies that the penalty is assessed for "each and every day that such retained funds are not deposited." A possible accrual of the penalty, then, is when each successive pay application was paid by the Defendant and retainage was withheld but not placed in escrow. This began in October of 2013, as established by the parties' stipulations when

---

[1] Subdivision (a)(2) states that a cause of action may have a different statute of limitations if criminal charges are brought against the perpetrator of the wrongful act. Tenn. Code Ann. § 28-3-104(a)(2).

retainage was initially withheld, and then with each successive pay application. It is undisputed that on September 30, 2014, the Plaintiff completed its work on the subcontract with Defendant. Yet, it was not until September 25, 2017, that this lawsuit was filed. Based upon these undisputed dates and events, under any of these accrual dates, the filing of the *Complaint* was in excess of the applicable one-year statute of limitations.

SSI appeals the trial court's award of summary judgment to HCG. It contends the trial court erred in the following ways: (1) determining the statute of limitations for its retainage claim, (2) determining that the retainage claim was one for statutory penalties, (3) determining when the cause of action for the retainage claim accrued, and (4) failing to consider HCG's liability under Tenn. Code Ann. § 66-34-104(c) for the 365-day period prior to HCG's tender of its retainage on December 12, 2017.

## II. ANALYSIS

### A. Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." TENN. R. CIV. P. 56.04. Appellate courts review a trial court's ruling on a summary judgment motion de novo, affording it no presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015).

This case involves determining the appropriate statute of limitations to apply to a claim for remedies provided by the PPA as well as the interpretation of the PPA. Determining the proper statute of limitations is a question of law that we review de novo, affording no presumption of correctness to the trial court's determination. *Benz-Elliott v. Barrett Enters., LP*, 456 S.W.3d 140, 147 (Tenn. 2015). Whether a claim is barred by the applicable statute of limitations is also a question of law that we review de novo. *Brown v. Erachem Comilog, Inc.*, 231 S.W.3d 918, 921 (Tenn. 2007); *see also Taylor v. Metro. Gov't of Nashville & Davidson Cnty.*, No. M2007-01774-COA-R3-CV, 2008 WL 5330502, at *5 (Tenn. Ct. App. Dec. 19, 2008) ("[T]he issue of when a claim accrued, for purposes of determining whether the statute of limitations has run, can be either a question of fact for the jury or a question of law for the court."). Finally, statutory construction involves issues of law, and we review the trial court's interpretation de novo, with no presumption of correctness. *Coffee Cnty. Bd. of Educ. v. City of Tullahoma*, 574 S.W.3d 832, 839 (Tenn. 2019).

B. Statute of Limitations

SSI's first and second issues are inter-related, and we will address them simultaneously. As SSI points out, the PPA does not contain a specific statute of limitations. SSI relies on two cases to support its argument that the trial court erred in applying the one-year statute of limitations found in Tenn. Code Ann. § 28-3-104(a)(1)(C). The first case is *Akers v. Sessions Paving Co.*, No. M2012-02602-COA-R3-CV, 2013 WL 4107622 (Tenn. Ct. App. Aug. 13, 2013). The plaintiff in that case was a subcontractor who was attempting to collect payment from a general contractor and insurer for work the subcontractor claimed he performed pursuant to a contract. *Akers*, 2013 WL 41076922, at *1. Two claims were at issue: breach of contract and violation of the PPA. *Id.* The section of the PPA that the subcontractor relied on was Tenn. Code Ann. § 66-34-301, which states that a subcontractor's performance for the improvement of real property in accordance with the provisions of a contract entitles the subcontractor to payment from the contractor. *Id.* at *2; *see* Tenn. Code Ann. § 66-34-301. The defendants asserted that the statute of limitations barred the subcontractor's claims, and the issue was which statute of limitations applied to the claims. *Akers*, 2013 WL 4107622, at *2. Noting that the PPA did not specify a limitations period for the subcontractor's claims, this Court stated that "we must determine the applicable statute of limitations 'according to the gravamen of the complaint.'" *Id.* (quoting *Vance v. Schulder*, 547 S.W.2d 927, 931 (Tenn. 1977)). We considered the basis for which the subcontractor sought damages and wrote that "it is readily apparent from the record that the basis for Plaintiff's claim under the Prompt Pay Act is that Defendants failed to pay for work performed by Akers on the commercial construction project." *Id.* at *3. Because the parties' contract was the basis of the subcontractor's claims, we held that the six-year statute of limitations for breach of contract claims applied to the subcontractor's claims under the PPA. *Id.*

SSI contends that the *Akers* court determined that, as a general matter, claims under the PPA were subject to a six-year statute of limitations. We disagree. Although claims for payment filed pursuant to Tenn. Code Ann. § 66-34-301 that are based on a construction contract may be subject to the six-year statute of limitations, as in *Akers*, this does not mean that claims brought pursuant to the PPA that are *not* based on Tenn. Code Ann. § 66-34-301 or on a contract are also subject to the six-year statute of limitations applicable to contract claims. SSI's only remaining claim under the PPA is not based on the parties' contract; it is based on HCG's failure to establish an escrow account for SSI's retainage as required by Tenn. Code Ann. § 66-34-104(a). Nothing in the parties' contract required HCG to set up an escrow account for SSI's retainage. Furthermore, *Akers* did not address the issue of retainage or the PPA's requirements set forth in Tenn. Code Ann. § 66-34-104 when retainage is withheld.

The other case SSI relies on is *Benz-Elliott v. Barrett Enterprises, LP*, 456 S.W.3d 140 (Tenn. 2015). *Benz-Elliott* clarified the analysis a court is to use to determine the

appropriate statute of limitations when a complaint asserts more than one cause of action. *Benz-Elliott*, 456 S.W.3d at 141. The plaintiff in *Benz-Elliott* asserted causes of action for breach of contract, intentional misrepresentation, and negligent misrepresentation. *Id.* at 144. The *Benz-Elliott* Court recognized that, in prior cases, courts often determined the applicable statute of limitations by ascertaining "the 'gravamen of the complaint.'" *Id.* at 147 (quoting *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006). The courts in these earlier cases "seemed to suggest that the complaint should be distilled to a single 'gravaman' based on the type of damages requested." *Id.* at 148. The *Benz-Elliott* Court noted that these prior decisions did not account for the fact that the Tennessee Rules of Civil Procedure permit plaintiffs to assert alternative causes of action and request alternative types of relief in a single complaint, regardless of the inconsistency of the claims or relief sought. *Id.* The Court then acknowledged that a plaintiff's complaint alleging alternative claims could be subject to differing statutes of limitations, with the result that requiring a court to identify a single gravamen from such a complaint would not be workable. *Id.* at 148-49. Thus, the Court held that "in choosing the applicable statute of limitations, courts must ascertain the gravamen of each claim, not the gravamen of the complaint in its entirety." *Id.* at 149. This involves a two-step process: first, a court must consider the legal basis of the plaintiff's claim(s), and second, a court must consider the type(s) of injuries for which the plaintiff seeks damages. *Id.* at 151.

SSI contends the trial court erred by failing to apply the two-step analysis set forth in *Benz-Elliott* to determine the appropriate statute of limitations applicable to its PPA claim for penalties. The trial court filed a Supplemental Memorandum shortly after filing its Memorandum and Order in response to SSI's request for a more in-depth explanation of its decision dismissing SSI's PPA claim. In its Supplemental Memorandum, the trial court explained that the two-step analysis the Supreme Court described in *Benz-Elliott* was "inapplicable and not dispositive because a gravamen of the claim analysis is not the issue." The trial court continued:

> It is undisputed that the statutory penalty in issue arises out of the facts of a contract claim and a contract is the basis for the case. Where the Court departs from the analysis of Plaintiff's Counsel is that the penalty in issue is a specialized remedy provided for by statute, and there is a special, statutory limitation, [Tenn. Code Ann. §] 28-3-104(a)(1)(C) for statutory penalties. The gravamen of the analysis is not triggered because there is a statute which explicitly provides the limitations period.

We agree with the trial court's analysis. Even though SSI's contract with HCG was the basis for its retainage claim and for its unapproved work order claim, the contract was not the basis for its claim for $300-per-day damages. The section of the PPA upon which SSI relies even describes the relief it provides as a "penalty." *See* Tenn. Code Ann. § 66-34-104(c). The PPA, and only the PPA, is the basis for this claim. As a result, the one-year statute of limitations period applicable to "statutory penalties" governs this claim.

- 7 -

*See Dawson v. Advance Mortg. Corp.*, 556 S.W.2d 761, 762 (Tenn. 1977) (holding claim for statutory penalty based on Retail Installment Sales Act subject to one-year statute of limitations applicable to statutory penalties); *Beard v. Vanderbilt Mortg. & Fin., Inc.*, No. 3:07-0934, 2008 WL 2323235, at \*4 (M.D. Tenn. June 2, 2008) (following Tennessee precedent and holding that remedy provided by Tennessee's Uniform Commercial Code constituted statutory penalty subject to one-year statute of limitations found in Tenn. Code Ann. § 28-3-104); *see also Wynne v. Stonebridge Life Ins. Co.*, 694 F. Supp.2d 871, 879 (W.D. Tenn. 2010) (holding bad faith claim constituted statutory remedy subject to Tennessee's one-year statute of limitations applicable to statutory penalties).

C.  When the Cause of Action Accrued

The trial court found that SSI's PPA cause of action accrued on February 19, 2016, at the latest, because that is when SSI submitted a pay application to HCG for its retainage.  SSI argues that the discovery rule should apply because SSI did not know or have reason to know when it submitted its pay application that its retainage had not been deposited into an interest-bearing escrow account in accordance with the PPA. The PPA requires "the party with the responsibility for depositing the retained amount in a separate, interest-bearing, escrow account with a third party" to notify the prime contractor of the account's details.  Tenn. Code Ann. § 66-34-104(d).  The parties stipulated to a number of facts including that (1) the Owner, and not HCG, was in possession of SSI's retainage until May 27, 2015, when the Owner transferred the retainage to HCG, and (2) after HCG received SSI's retainage from the Owner, HCG failed to deposit the retainage into a separate interest-bearing account with a third party. The PPA does not provide a subcontractor with any right to be notified of the particulars of the escrow account when retainage is withheld from it.  As SSI points out, the parties did not stipulate when SSI discovered, or should have discovered, that HCG had not deposited SSI's retainage into an interest-bearing escrow account.

The Tennessee Supreme Court has addressed the discovery rule on numerous occasions and has described it as an "equitable exception that tolls the running of the statute of limitations until the plaintiff knows, or in the exercise of reasonable care and diligence, should know that an injury has been sustained." *Pero's Steak and Spaghetti House v. Lee*, 90 S.W.3d 614, 621 (Tenn. 2002) (citing *Quality Auto Parts Co., Inc. v. Bluff City Buick Co., Inc.*, 876 S.W.2d 818, 820 (Tenn. 1994)).  A plaintiff "is deemed to have discovered the right of action when the plaintiff becomes aware of facts sufficient to put a reasonable person on notice that he or she has suffered an injury as a result of the defendant's wrongful conduct."  *Id.* (citing *Shadrick v. Coker*, 963 S.W.2d 726, 733 (Tenn. 1998), and *Roe v. Jefferson*, 875 S.W.2d 653, 657 (Tenn. 1994)).  The purpose of the discovery rule is to prevent the inequity that would result from a strict application of the statute of limitations "'at a time when the injury is unknown and unknowable.'"  *Id.* (quoting *Teeters v. Currey*, 518 S.W.2d 512, 515 (Tenn. 1974)).  "It is based on 'reason, logic and fundamental fairness.'"  *Smith v. Hauck,* 469 S.W.3d 564, 569-70 (Tenn. Ct.

App. 2015) (quoting *McCroskey v. Bryant Air Conditioning Co.*, 524 S.W.2d 487, 489 (Tenn. 1975)).

When determining whether to apply the discovery rule to a particular type of case, our Supreme Court has explained that it "considers the specific statute of limitations at issue and then 'balances the policies furthered by application of the discovery rule against the legitimate policies upon which' the statute of limitations is based." *Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tenn., Inc.*, 566 S.W.3d 671, 709 (Tenn. 2019) (quoting *Pero's Steak and Spaghetti House*, 90 S.W.3d at 620). In the case at bar, the statute of limitations at issue provides that actions for statutory penalties "shall be commenced within one (1) year after the cause of action accrued." Tenn. Code Ann. § 28-3-104(a)(1)(C). The statute does not specify when a cause of action for statutory penalties accrues, and we are unaware of any case in which a court has determined when a cause of action for the penalties described in Tenn. Code Ann. § 66-34-104(c) accrues for purposes of starting the statute of limitations period running.

In considering "the policies furthered by application of the discovery rule against the legitimate policies upon which the statute of limitations is based," *Individual Healthcare Specialists, Inc.*, 566 S.W.3d at 709 (quotation marks and internal citation omitted), the *Individual Healthcare Specialists* Court first set forth the rationale for imposing a statute of limitations on a plaintiff's claims:

> Statutes of limitations "reflect a societal choice that actions must be brought within a certain time period." *Redwing [v.Catholic Bishop for the Diocese of Memphis]*, 363 S.W.3d [436,] 456 [Tenn. 2012] (quotation marks omitted). For that reason, "courts construe exceptions to statutes of limitations carefully to assure that they are not extended beyond their plain meaning." *Id.*; *see Quality Auto Parts*, 876 S.W.2d at 820 (similar). "All statutes of limitations are intended to ensure fairness and justice." *Pero's*, 90 S.W.3d at 621.

*Id.* The *Individual Healthcare Specialists* Court then summarized the reasons for allowing the discovery rule to toll the running of a statute of limitations period:

> "In 1974, this Court recognized and adopted the discovery rule in response to the 'harsh and oppressive' results of the traditional accrual rule in circumstances in which the injured party was unaware of the injury." *Redwing*, 363 S.W.3d at 458 (citing *Teeters v. Currey*, 518 S.W.2d 512, 516 (Tenn. 1974)). . . . The discovery rule is an "equitable exception" to the statute of limitations. *Pero's*, 90 S.W.3d at 621. "The rule responds to the unfairness of 'requiring that he [a plaintiff] sue to vindicate a non-existent wrong, at a time when injury is unknown and unknowable.'" *Quality Auto Parts*, 876 S.W.2d at 820 (quoting *Teeters*, 518 S.W.2d at 515).

*Id.* at 709-10.

The discovery rule has been applied to different types of tort actions including medical malpractice, legal malpractice, dental malpractice, and products liability. *Id.* at 710. It has also been applied to breach of contract actions when the alleged breach is "inherently undiscoverable." *Goot v. Metro. Gov't of Nashville & Davidson Cnty.*, No. M2003-02013-COA-R3-CV, 2005 WL 3031638, at *11 (Tenn. Ct. App. Nov. 9, 2005); *see Individual Healthcare Specialists, Inc.*, 566 S.W.3d at 712 (Supreme Court refrained from adopting or rejecting "inherently undiscoverable" standard set forth in *Goot* because alleged breach at issue was not inherently undiscoverable).

This court has applied the discovery rule to toll the one-year statute of limitations of a statutory action filed pursuant to the Tennessee Governmental Tort Liability Act ("GTLA"). *Sutton v. Barnes*, 78 S.W.3d 908, 916-17 (Tenn. Ct. App. 2002). The plaintiffs in that case sought compensation for damage to their home as a result of blasting activity on their neighbors' property. *Id.* at 910. The plaintiffs initially sued the company that conducted the blasting activity and the company they believed supplied the blasting material. *Id.* at 911. In response to their interrogatories, the plaintiffs learned that the county's highway commission provided the explosives that caused the damage, and the plaintiffs amended their complaint to add both the county and the county highway commission as additional defendants. *Id.* The county defendants moved to dismiss the complaint on the basis that the plaintiffs' claim against them was barred by the one-year statute of limitations set forth in the GTLA because they were not added as defendants until more than a year after the cause of action arose.[2] *Id.* at 911-12. The plaintiffs argued that the discovery rule tolled the statute of limitations and that their claim did not arise until the date they discovered that the county supplied the explosives to the construction company. *Id.* at 912. According to the plaintiffs, they did not know and had no way of knowing that the county supplied the explosives to the construction company until the plaintiffs received the construction company's responses to their interrogatories, which was more than a year after the damage occurred. *Id.*

The trial court in *Sutton* granted the county's motion to dismiss and the plaintiffs appealed. *Id.* On appeal, this court recognized that the discovery rule "was designed 'to alleviate the intolerable result of barring a cause of action by holding that it "accrued" before the discovery of the injury or wrong.'" *Id.* at 912-13 (quoting *Foster v. Harris*, 633 S.W.2d 304, 305 (Tenn. 1982)). After discussing Tennessee cases in which the court had refused to apply the discovery rule to GTLA cases, *id.* at 913-14, as well as similar cases from other states in which courts had applied the discovery rule, *id.* at 915-16, the Court of Appeals in *Sutton* concluded that "the discovery rule should be applied to cases

---

[2]Actions filed pursuant to the GTLA "must be commenced within twelve (12) months after the cause of action arises." Tenn. Code Ann. § 29-20-305(b).

- 10 -

involving the GTLA." *Id.* at 916. Thus, the *Sutton* court held, "a cause of action 'arises' under the GTLA when the plaintiff discovers, or in the exercise of reasonable care should have discovered, that he or she sustained an injury as a result of the defendant's wrongful conduct." *Id.* The *Sutton* court clarified that its holding does not extend the period within which a plaintiff must file its complaint once its claim "arises"; rather, "the discovery rule merely operates to determine when the 12 months starts to run." *Id.* at 917. The court reached this conclusion despite the strict construction courts traditionally apply to the GTLA. *Id.* at 913.

We addressed the PPA in *Beacon4, LLC v. I & L Investments, LLC*, 514 S.W.3d 153 (Tenn. Ct. App. 2016), and we described the underlying purpose of the statute as follows:

> The General Assembly enacted the PPA in 1991 "to provide for timely payments to contractors, subcontractors, materialmen, furnishers, architects, and engineers and to provide for interest on late payments." 1991 Pub. Acts Ch. 45 (H.B. 875). We determine the PPA in general to have remedial aims in that it operates to effectuate the means by which those it was designed to protect may recover their already existing property and contractual rights in funds they have earned. Legitimate business enterprises and consumers as a whole are then protected from the consequences of contractors, subcontractors, materialmen, furnishers, architects, and engineers receiving less than they have bargained for and earned.

*Beacon4, LLC*, 514 S.W.3d at 212 (footnote omitted). The record does not address when SSI knew, or should have known, that its retainage was not deposited in an interest-bearing escrow account as required by the PPA. As discussed above, the PPA does not require a subcontractor to be informed of the creation or particulars of the interest-bearing escrow account into which the subcontractor's retainage is supposed to be deposited. *See* Tenn. Code Ann. § 66-34-104. Stated another way, a subcontractor that has retainage withheld does not have the statutory right to information concerning the escrow account that the prime contractor has.

For reasons the Supreme Court and this court have stated for applying the discovery rule to toll the running of the statute of limitations in other situations, we conclude that the discovery rule should apply to PPA claims for the $300-per-day penalty allowed by Tenn. Code Ann. § 66-34-104(c) to prevent the inequity that would result from a strict application of the one-year statute of limitations "at a time when injury is unknown and unknowable." *Teeters*, 518 S.W.2d at 515. As in *Sutton*, however, "we hasten to add that we do not pass judgment on the issue of whether the rule operates to toll the statute of limitations in the instant case" because there is a genuine issue of material fact as to when SSI learned or should have learned that its retainage was not in

an interest-bearing escrow account as required by the PPA.[3] *Sutton*, 78 S.W.3d at 917. This issue must be resolved by the trier of fact upon remand. *See Smith*, 469 S.W.3d at 572 ("The question of whether a plaintiff exercised reasonable care and diligence to discover his claims generally is a factual question for the finder of fact.").

## D. Application of the PPA to the Year Before SSI Filed its Complaint

SSI's final argument is that the trial court erred in failing to rule that it is entitled to $300-per-day penalties for the 365 days that preceded its acceptance of the retainage HCG tendered on December 12, 2017. SSI's argument, in essence, is that even if its cause of action for statutory penalties under the PPA "accrued" more than one year before it filed its complaint, *see* Tenn. Code Ann. § 28-3-104(a)(1)(C), HCG is, nevertheless, liable for paying the $300-per-day penalties for each of the 365 days leading up to HCG's tender of its retainage on December 12, 2017. SSI bases its argument on the plain language of the statute, Tenn. Code Ann. § 66-34-104(c), which states that if the party withholding the retained funds fails to deposit the funds into an interest-bearing escrow account as described in subsection (a), "such party shall be responsible for paying the owner of the retained funds an additional three hundred dollar ($300) penalty per day *for each and every day that such retained funds are not deposited into such escrow account*." (Emphasis added.) SSI's interpretation of the statute means that each day that HCG failed to deposit SSI's retainage into an escrow account, HCG violated the statute and incurred a new, separate $300 penalty. Thus, while SSI may not be able to recover some of the individual daily penalties due to the operation of the one-year statute of limitations, the daily penalties for the year prior to September 25, 2017, when SSI filed its complaint, should still be recoverable.

HCG contends that SSI has waived this argument because it did not raise it before the trial court. *See Blankenship v. Anesthesiology Consultants Exch., P.C.*, 446 S.W.3d 757, 760 (Tenn. Ct. App. 2014) ("The law in Tennessee is well settled that issues not raised in the trial court may not be raised on appeal."). We disagree. SSI's position in the trial court was that it was entitled to the $300-per-day penalty for each day that HCG failed to deposit its retainage into an interest-bearing escrow account in compliance with the PPA. Here, SSI argues that if the trial court was correct that its claim for penalties is subject to the one-year statute of limitations, and if SSI is not able to benefit from the discovery rule to toll the running of the statute, the trial court erred by dismissing its claim in its entirety because SSI is still entitled to the $300-per-day penalties for each of the 365 days leading up to HCG's tender of its retainage. SSI is not raising a novel

---

[3]SSI also argues that the continuing violation doctrine applies to toll the running of the statute of limitations. This doctrine has only been applied by Tennessee courts in employment cases involving some type of discrimination, *see Booker v. The Boeing Co.*, 188 S.W.3d 639, 643-44 (Tenn. 2006); *Jackson v. City of Cleveland*, No. E2015-01279-COA-R3-CV, 2016 WL 4443535, at *5 (Tenn. Ct. App. Aug. 22, 2016), and SSI offers no argument or citation to any authority for its application to cases involving statutory penalties.

argument; it is merely taking into account the trial court's ruling and restating the argument it made below.[4]

In interpreting the PPA, we are guided by standards our Supreme Court has set forth for statutory construction:

> "'The cardinal rule of statutory construction is to effectuate legislative intent, with all rules of construction being aides [sic] to that end.' *Browder* [*v. Morris*], 975 S.W.2d [308,] 311 [(Tenn. 1998)]; *see Beard [v. Branson]*, 528 S.W.3d [487,] 496 [(Tenn. 2017)]. We examine 'the language of the statute, its subject matter, the object and reach of the statute, the wrong or evil which it seeks to remedy or prevent, and the purpose sought to be accomplished in its enactment.' *State v. Collins*, 166 S.W.3d 721, 726 (Tenn. 2005) (citation omitted) (internal quotation marks omitted). "'We must seek a reasonable construction in light of the purposes, objectives, and spirit of the statute based on good sound reasoning.'" *Beard*, 528 S.W.3d at 496 (quoting *Scott v. Ashland Healthcare Ctr., Inc.*, 49 S.W.3d 281, 286 (Tenn. 2001)).

*Spires v. Simpson*, 539 S.W.3d 134, 143 (Tenn. 2017); *see also Beacon4*, 514 S.W.3d at 169. The statutory language "'is of primary importance, and the words must be given their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose.'" *Coffee Cnty. Bd. of Educ.*, 574 S.W.3d at 839 (quoting *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 368 (Tenn. 2012)).

As discussed above, the purpose of the PPA is remedial and is meant to ensure that those who work on construction projects receive timely payments, interest on payments that are made late, and "to effectuate the means by which those it was designed to protect may recover their already existing property and contractual rights in funds they have earned." *Beacon4, LLC*, 514 S.W.3d at 212. In our effort to "seek a reasonable construction in light of the purposes, objectives, and spirit of the statute based on good sound reasoning," *Spires*, 539 S.W.3d at 143, and taking into account the express language of Tenn. Code Ann. § 66-34-104(c), we agree with SSI's argument. If SSI is able to prove that HCG was obligated to deposit SSI's retainage into an interest-bearing escrow account consistent with Tenn. Code Ann. § 66-34-104(a), and if SSI is unable to benefit from the discovery rule in future proceedings, SSI is still entitled to statutory penalties for each of the 365 days leading up to SSI's filing of its complaint on September 25, 2017, and beyond,[5] based on HCG's failure to comply with the PPA.

---

[4]In its Supplemental Memorandum, the trial court quoted from SSI's motion filed on January 11, 2019, in which SSI sought additional legal grounds for the court's ruling dismissing its complaint. In its motion, SSI argued: "Under the plain language of the Statutory PPA Penalty, the liability arises each and every day of non-compliance."

[5]The 365 days should be counted back from the date SSI filed its complaint, not the day when HCG

### III. CONCLUSION

The judgment of the trial court is vacated, and this matter is remanded for further proceedings consistent with this opinion. Costs of appeal shall be assessed against the appellee, Holladay Construction Group, LLC, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE

---

tendered its retainage. *See* Tenn. Code Ann. § 28-3-104(a)(1)(C). SSI may also be entitled to penalties for each day following the filing of its complaint, up to the day when HCG tendered SSI's retainage to SSI. The parties agree that HCG initially tendered SSI's retainage on October 27, 2017, and that SSI did not accept the payment until HCG also tendered a check for the change order work on December 12, 2017. We have not been asked to consider whether SSI was correct in refusing to accept the initial tender on October 27.